THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                                  Case No. 4:21-cr-00180-KGB

ADENA MARIE WATTS                                                DEFENDANT

**ORDER**

Before the Court is defendant Adena Marie Watts' motion to suppress evidence (Dkt. Nos. 8; 13).[1] The United States filed a response in opposition to the motion (Dkt. No. 38). Both parties confirmed via informal communication that neither side seeks a hearing on the instant motion.[2] This matter is now ripe. The Court, having reviewed the motion to suppress, the United States' response, dash camera footage of the stop, the incident report, and other record evidence, denies Ms. Watts' motion to suppress (Dkt. Nos. 8; 13).

    **I.**     **Factual Background**

Unless otherwise noted, the Court draws the following facts from Ms. Watts' motion to suppress, the United States' response, and all record evidence, including but not limited to the incident report completed by the arresting officer, and dash camera footage of the traffic stop in question (Dkt. Nos. 13; 38; 38-1; 39).

---

[1] The Court notes that Ms. Watts appears to have filed the same motion as two separate docket entries (Dkt. Nos. 8; 13). Her later filing provides additional case illustrations for the Court to consider (*See, e.g.,* Dkt. No. 13, ¶ 11). Though the Court may not cite both motions throughout this Order, the Court has considered both filings in reaching its decision, and this Court's review, analysis, and ruling applies to both filings.

[2] The United States and Ms. Watts' counsel confirmed via email that neither side seeks a hearing.

On June 3, 2021, Corporal Dakotah Bailey ("Corporal Bailey") with the Arkansas State Police observed a blue Nissan Altima traveling westbound on Interstate 30 (Dkt. No. 38, at 1). When the Nissan Altima's driver noticed Corporal Bailey's police vehicle, the Nissan Altima "slowed and moved to the center lane[,]" which Corporal Baily found to be "not normal" for a vehicle that "was not speeding as it approached" Corporal Bailey's police vehicle (Dkt. No. 38-1, at 3). Corporal Bailey "attempted to run the license plate as [the Nissan Altima] passed" (*Id.*). Corporal Bailey's incident report explains that, after the Nissan Altima passed, it attempted to evade his police car (*Id.*). Corporal Bailey wrote:

> I attempted to get behind the car to confirm the license plate. As I got behind the car it immediately swapped lanes from the middle lane to the right lane. Once I was closer[,] I was able to see that I had checked the wrong license plate number. I checked the correct plate number through dispatch and also through ACIC on my computer. The New York license plate number JMS6107 showed to be expired since November of 2020 and dispatch I confirmed that. I initiated a traffic stop on the car near the 117 mile marker.

(*Id.*). The driver identified herself as the defendant, Adena Marie Watts. There was one passenger in the car—identified as Jessica Gourno, who is a co-defendant in this criminal case. Upon being stopped and asked for relevant documentation, Ms. Watts informed Corporal Bailey that she had rented the vehicle.

Corporal Bailey asked Ms. Watts to exit the vehicle. As Ms. Watts was attempting to pull up the rental agreement on her phone, Corporal Bailey inquired as to their destination and the purpose of their trip. Ms. Watts told Corporal Bailey that they were traveling to Houston, Texas, to pick up Ms. Watts' son. Ms. Watts also informed Corporal Bailey that she and Ms. Gourno had left from Columbus, Ohio, the night before. Corporal Bailey asked Ms. Watts if they had made any stops during their trip, and she replied that they had stopped several times but not stayed anywhere overnight. Corporal Bailey then spoke with Ms. Gourno. Ms. Gourno told Corporal

Bailey that they were heading to see Ms. Watts' son, who Ms. Gourno represented was Ms. Gourno's boyfriend. After speaking with Ms. Watts and Ms. Gourno, Corporal Bailey went to his patrol car and ran a criminal-history check. This check showed that Ms. Watts had multiple felony arrests related to illicit drugs. Corporal Bailey then exited his patrol car and the following conversation ensued:

| | |
|---|---|
| Corporal Bailey: | Ms. Watts, have you ever been arrested for anything? |
| Ms. Watts: | Have I been arr . . . |
| Corporal Bailey: | Yeah. For what? |
| Ms. Watts: | Tampering with evidence. |
| Corporal Bailey: | Is that it? |
| Ms. Watts: | Yeah. |
| Corporal Bailey: | What did you tamper with? |
| Ms. Watts: | My brother and dad got into something and [unintelligible] I messed with something that had to do with their case. |
| Corporal Bailey: | Okay, that's it? |
| Ms. Watts: | Yeah. |
| Corporal Bailey: | No other drug charges, nothing like that? |
| Ms. Watts: | I was at somebody's house, and they got in trouble and I was there and I got [unintelligible]. |
| Corporal Bailey: | But, no drugs in here [pointing to car]? |
| Ms. Watts: | [Shakes head no]. |
| Corporal Bailey: | No. You sure? |
| Ms. Watts: | I'm positive. |
| Corporal Bailey: | Okay. |

Ms. Watts: How do I get to this hotel? I didn't see it.

Corporal Bailey: You will have to go up here and come back around. So, there's no drugs in here at all?

Ms. Watts: No.

Corporal Bailey: Is there any big amounts of money, like $100,000 or $200,000?

Ms. Watts: No.

Corporal Bailey: No guns?

Ms. Watts: No.

Corporal Bailey: No weapons of mass destruction?

Ms. Watts: [Shakes head no].

Corporal Bailey: Do you mind if I check?

Ms. Watts: You can check.

Corporal Bailey: I can?

Ms. Watts: I mean, it's up to you. I mean.

Corporal Bailey: Well, I would like to if you don't mind.

Ms. Watts: [Appears to speak through her mask, shrugs, and shakes head in the affirmative].

Corporal Bailey: Okay. Alright, do me a favor and walk up here in front of the car, okay.

[Corporal Bailey and Ms. Watts walk to the front of the car].

Corporal Bailey: Alright just walk up there, I am going to have her step out.

Ms. Watts: [Unintelligible]

Corporal Bailey: Yep, you go right there. [Opens the passenger car door and begins speaking to Ms. Gourno] Hop out for me. [Looks to Ms. Watts and begins speaking] Keep walking, keep walking, keep walking.

|  |  |
|---|---|
|  | [Begins speaking to Ms. Gourno]  You got to wear that seat belt, ain't gonna do no good like that. |
| Ms. Gourno: | I don't like it.  It's stuck. |
| Corporal Bailey: | Go stand up there with her.  [Proceeds to search the car] |

(Dkt. No. 39).

When Corporal Bailey accessed the vehicle's trunk, he immediately noticed that it smelled like marijuana and laundry detergent (Dkt. No. 38-1, at 3).  He saw a box of Gain detergent that appeared to have detergent leaking through the bottom of it.  He turned the box over and saw that it had been opened and that there had been an attempt to reseal it.  He opened the box and found a package inside that was determined to be approximately 2.25 pounds of cocaine.  Corporal Bailey also discovered $120,000.00 of U.S. currency.

## II.     Ms. Watts' Motion To Suppress

Ms. Watts filed the instant motion seeking to suppress the evidence seized from the warrantless search of her vehicle, contending that the warrantless search and her extended seizure violated her rights under the Fourth Amendment (Dkt. Nos. 8; 13).  She argues that, though the stop of her vehicle for expired plates was valid, Corporal Bailey "almost immediately abandon[ed] the mission of the stop," violating her constitutional rights, because the continued stop lacked reasonable suspicion or probable cause, violating the Fourth Amendment pursuant to the Supreme Court's holding in *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015) (Dkt. No. 13, ¶¶ 6–12).  The United States responds by noting that Ms. Watts admits that Corporal Bailey had probable cause to stop the vehicle for expired tags and argues that her continued detention was not unreasonable because the purpose of the stop was not complete when Ms. Watts gave Corporal Bailey permission to search her car (Dkt. No. 38, at 2).  As a result, the United States asserts that

neither the traffic stop nor the consent search violated the Fourth Amendment under *Rodriguez*, 575 U.S.at 354–55 (*Id.*, 3–4).

### A.     Initial Traffic Stop

Ms. Watts does not dispute the basis of the stop, nor could she (Dkt. No. 13, ¶ 6). The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. Const. amend. IV. It is "beyond dispute" that vehicles are "effects" under the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 404 (2012) (citing *United States v. Chadwick*, 433 U.S. 1, 12 (1977)). However, binding precedent is clear – a law enforcement officer may stop a vehicle when the officer has probable cause that a traffic violation, however minor, has occurred. *See generally Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Beck*, 140 F.3d 1129, 1133 (8th Cir. 1998). When a law enforcement officer stops a motor vehicle and questions its occupants, the stop constitutes a seizure under the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention is quite brief. *Brendlin v. California*, 551 U.S. 249, 255–56 (2007); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Wheat*, 278 F.3d 722, 726 (8th Cir. 2001).

Ms. Watts concedes that the stop of her vehicle was valid (Dkt. No. 13, ¶ 6). Further, based on the evidence presented, the Court rejects any challenge to the traffic stop. Video of the traffic stop and the incident report indicate that Corporal Bailey pulled over Ms. Watts for driving with expired tags (Dkt. Nos. 38-1, at 3; 39).

6

### B. Alleged Extension Of The Traffic Stop

Ms. Watts argues that Corporal Baily abandoned the initial reason for stopping her—driving with expired tags—and engaged in a "fishing expedition" for "consent to search" her vehicle without reasonable suspicion or probable cause, violating the commands of *Rodriguez*, 575 U.S. at 354–55, and *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (Dkt. No. 13., at ¶¶ 6, 12, 19–22). The United States disagrees, maintaining that the purpose of the stop—issuing the citation for the expired tags—had not concluded when Corporal Bailey requested Ms. Watts' consent (Dkt. No. 38, at 3). Moreover, the United States maintains that Corporal Bailey engaged in a series of lawful activities that did not extend the traffic stop beyond a constitutionally permissible point (*Id.*, at 4–5).

In *Rodriguez*, 575 U.S. at 355, the United States Supreme Court acknowledged that an officer is permitted to "conduct certain unrelated checks during an otherwise lawful traffic stop," but it held that he "may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *United States v. Murillo-Salgado*, 854 F.3d 407, 415 (8th Cir. 2017) (quoting *Rodriguez*, 575 U.S. at 355); *see also Caballes*, 543 U.S. at 408 (explaining that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."). Reasonable suspicion requires "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United States v. Donnelly*, 475 F.3d 946, 952 (8th Cir. 2007) (quotation omitted). "Whether a particular detention is reasonable is a fact-intensive question, measured in objective terms by examining the totality of the circumstances." *United States v. Englehart*, 811 F.3d 1034, 1041 (8th Cir. 2016).

The Eighth Circuit has held that, "[a]fter a law enforcement officer initiates a traffic stop, the officer 'may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation.'" *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013) (quoting *United States v. Barragan*, 379 F.3d 524, 528 (8th Cir. 2004)). These routine tasks include "computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *Barragan*, 379 F.3d at 528–29; *see also United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008) (citing *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002)). "An officer also may request that the driver sit in the patrol car to answer questions and may ask questions about his itinerary." *Quintero-Felix*, 714 F.3d at 567. Furthermore, officers may ask seemingly off-topic questions such as whether a driver is carrying illegal drugs without offending the Fourth Amendment. *United States v. Long*, 532 F.3d 791, 795 (8th Cir. 2008) (citing *United States v. Olivera-Mendez*, 484 F.3d 505, 510 (8th Cir. 2008)). "[T]he purpose of the traffic stop is complete . . ." when the "initial investigation is finished[,]" after which point, "further detention of the driver would be unreasonable, unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention or unless the continued encounter is consensual." *Englehart*, 811 F.3d at 1040–41; *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010); *see also United States v. Gunnell*, 775 F.3d 1079, 1083 (8th Cir. 2015) (explaining that "the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed.").

"An officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered." *Murillo-Salgado*, 854 F.3d at 415 (citing *United States v. Linkous*, 285 F.3d 716, 720 (8th Cir. 2002)).

"But the officer must identify 'specific and articulable facts which, taken together with rational inferences from those facts,' amount to reasonable suspicion that further investigation is warranted." *Murillo-Salgado*, 854 F.3d at 415 (citing *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The totality of the circumstances are to be considered in determining whether reasonable suspicion existed." *Murillo-Salgado*, 854 F.3d at 415 (citing *Woods*, 829 F.3d at 679 (quoting *Terry*, 392 U.S. at 21)).

Ms. Watts maintains that Corporal Bailey abandoned the purpose of the traffic stop within mere minutes of pulling her over, unlawfully extending the stop without reasonable suspicion in violation of her constitutional rights recognized in *Rodriguez*, 575 U.S. at 354–55, and *Caballes*, 543 U.S. at 408 (Dkt. No. 13, ¶¶ 9, 17, 20). Ms. Watts points the Court to *United States v. Meadows*, Case No. 6:21-CR-27-REW-HAI, 2021 WL 4782259 (E.D. Ky. Oct. 13, 2021), to bolster her argument. In *Meadows*, 2021 WL 4782259 at *2, the officer, while conducting an otherwise lawful traffic stop, "launched into a discussion of drug trafficking issues" with a pulled-over motorist after having issued a verbal warning and returned the driver's "routine documents." During that conversation subsequent to the officer issuing the verbal warning and returning the motorist's documents, the officer did not tell the motorist he was free to go. *Id.* Instead, the officer eventually asked for consent to search the motorist's vehicle, consent the motorist gave. *Id.* The officer conducted the search in accordance with the motorist's consent and discovered methamphetamine. *Id.* The Federal District Court for the Eastern District of Kentucky, applying Sixth Circuit precedent, determined that the officer did not have reasonable suspicion to continue the conversation with the motorist after issuing the motorist a verbal warning and returning the motorist's documents. *Id.*, at *4. The *Meadows* court rejected the contention that the officer had reasonable suspicion based solely on the motorist's nervous demeanor and the motorist

volunteering that he had an empty syringe in his pocket. *Id.* For these reasons, the *Meadows* court determined that the officer "measurably extended an initially valid traffic stop beyond the appropriate temporal limits" and granted the motorist's motion to suppress. *Id.*, at *1.

The Court acknowledges that *Meadows* is persuasive authority only, not controlling. Though the United States does not appear to address *Meadows* in its response, it argues that, "at the time [Corporal] Bailey requested and received consent to search the vehicle, the purpose of the traffic stop had not concluded" (Dkt. No. 38, at 3). The Court agrees with the United States.

During the course of the traffic stop, Corporal Bailey engaged in a series of constitutionally permissible activities. He requested that Ms. Watts step out of the vehicle. *See generally Payne*, 534 F.3d at 951. He conducted "a criminal history search." *Id.* He also asked seemingly "off-topic question[s]." *See generally Long*, 532 F.3d at 795. Unlike the facts of *Meadows*, Corporal Bailey had not yet issued a verbal warning, written warning, or a citation at the relevant time (Dkt. No. 39). Further, Corporal Bailey had not yet returned Ms. Watts' documents.

Based on the dash-camera video and record evidence before the Court, the Court determines that Corporal Bailey had not concluded with the purpose of the stop. *See Peralez*, 526 F.3d at 112 (concluding that an officer extended a search past the constitutionally permissible point when the officer "determined after three minutes that the driver of [a] van need only receive a warning ticket for [an] obstructed license plate."). The Court concludes that Corporal Bailey did not "prolong" this stop "beyond the time reasonably required to complete" issuing Ms. Watts a citation; less than ten minutes transpired between Ms. Watts stopping her vehicle and giving Corporal Bailey permission to search her car. *Caballes*, 543 U.S. at 408 (explaining that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become

unlawful if it is prolonged); *see also Murillo-Salgado*, 854 F.3d at 415 (quoting *Rodriguez*, 575 U.S. at 355).

Even if Corporal Bailey "prolonged" the stop, as Ms. Watts argues, the Court would not grant the instant motion to suppress because the totality of the circumstances demonstrate that Corporal Bailey had reasonable suspicion that Ms. Watts was engaged in illegal conduct outside of the purpose for the stop. *See generally Englehart*, 811 F.3d at 1041. The Court reaches this conclusion by examining the circumstances leading up to Corporal Bailey exiting his patrol car after having run Ms. Watts' criminal history.

Corporal Bailey observed a blue Nissan Altima driving down the interstate (Dkt. No. 38-1, at 3). When the Nissan Altima noticed Corporal Bailey's police vehicle, the Nissan Altima "slowed and moved to the center lane[,]" which Officer Baily found to be "not normal" for a vehicle that "was not speeding as it approached" Corporal Bailey's police vehicle (*Id.*). The Nissan Altima also attempted to evade Corporal Bailey while he attempted to confirm the license plate number (*Id.*). After Corporal Bailey made the stop, he observed the driver, Ms. Watts, "visibly shaking," noted that Ms. Watts fumbled with her phone in an effort to locate her rental agreement for the vehicle, noted that Ms. Watts drove from Ohio to Arkansas overnight without stopping, and, in the course of conducting a routine safety check in his patrol car, learned that Ms. Watts had "multiple felony arrest[s] related to drugs" (Dkt. No. 38-1, at 3; 39). These facts and the rational inferences drawn from them are sufficiently "specific and articulable" to show that Corporal Bailey reasonably suspected Ms. Watts was engaged in criminal activity. *United States v. Callison*, 2 F.4th 1128, 1132 (8th Cir. 2021), *cert. denied*, 142 S. Ct. 830 (2022) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

For the foregoing reasons, the Court concludes that Corporal Bailey did not unreasonably extend Ms. Watts' traffic stop in such a manner that would contravene the Fourth Amendment's protection against unreasonable searches and seizures.

### C. Consent To Search The Vehicle

The incident report detailing the traffic stop at issue explains that, subsequent to securing Ms. Watts' consent to search her vehicle, Corporal Bailey discovered and confiscated a packaged substance Corporal Bailey suspected to be cocaine and a large sum of currency (Dkt. No. 38-1, at 3). Ms. Watts argues that the stop, the purpose for which Corporal Bailey had abandoned within mere minutes according to Ms. Watts, was not supported by reasonable suspicion and was "an inherently coercive situation" (Dkt. No. 13, ¶¶ 14, 16–17). Ms. Watts describes her alleged consent as "mere acquiesce to a claim of lawful authority," making the subsequent search of her vehicle a violation of her Fourth Amendment rights (*Id.*, ¶ 18). The Court concludes for the reasons explained that Corporal Bailey did not prolong the stop impermissibly and that, even if he prolonged the stop as Ms. Watts argues, Corporal Bailey had the requisite reasonable suspicion to extend his encounter with Ms. Watts and to ask for consent to search Ms. Watts' vehicle. *See generally Callison*, 2 F.4th at 1132 (citing *Terry*, 392 U.S. at 21). The Court now addresses whether Ms. Watts freely gave her consent.

Warrantless searches are *per se* unreasonable, "subject only to a few specifically established and well-delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Consent to search is one [such] exception . . . and '[a] warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search.'" *United States v. Farnell*, 701 F.3d 256, 262–63 (8th Cir. 2012) (quoting *United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005)). "Asking

for consent to search does not violate the Fourth Amendment in the absence of coercive or otherwise unusual circumstances." *Long*, 532 F.3d at 795 (citing *United States v. Yang,* 345 F.3d 650, 654 (8th Cir. 2003)).

"An individual may validly consent to an otherwise impermissible search if, in the totality of the circumstances, consent is freely and voluntarily given, and not the product of implicit or explicit coercion." *United States v. Castellanos,* 518 F.3d 965, 969 (8th Cir. 2008) (citation and internal quotation marks omitted). Courts examine several factors when determining if consent was freely given. *Sanders*, 424 F.3d at 773 (citing *Smith*, 260 F.3d at 924). These factors include: (1) age, (2) general intelligence and education, (3) whether the individual was under the influence of drugs or alcohol, (4) whether she was informed of her *Miranda* rights, and (5) whether she had experienced prior arrests and was thus aware of the protections the legal system affords suspected criminals. *Sanders*, 424 F. 3d at 773.

Further, "the environment in which the alleged consent was secured is also relevant." *Id.* Factors regarding the environment include: (1) the length of time one was detained, (2) whether the police threatened, physically intimidated, or punished the suspect, (3) whether the police made promises or misrepresentations, (4) whether the suspect was in custody or under arrest when the consent was given, (5) whether the consent occurred in a public or a secluded place, and (6) whether the suspect stood by silently as the search occurred. *Id.* Courts also examine "whether the defendant's contemporaneous reaction to the search was consistent with consent." *Sanders*, 424 F.3d at 773 (citing *United States v. Jones,* 254 F.3d 692, 696 (8th Cir. 2001)). Courts do not apply these factors "mechanically"; "no single factor is dispositive or controlling." *Sanders*, 424 F.3d at 773–74 (quoting *United States v. Bradley,* 234 F.3d 363, 366 (8th Cir. 2000) (internal citation omitted)).

"The government has the burden of proving by a preponderance of the evidence that a subject's alleged consent to a search was legally sufficient to warrant admitting the fruits of the search into evidence." *Farnell*, 701 F.3d at 263 (quoting *United States v. Cedano–Medina,* 366 F.3d 682, 684 (8th Cir. 2004)).  Specifically, the government must show that a person's consent to a search was a product of "essentially free and unconstrained choice." *United States v. Garcia-Garcia*, 957 F.3d 887, 895 (8th Cir. 2020) (quoting *Jones*, 254 F.3d at 695).  "This is an objective standard such that 'a person can render a search legal by behaving in a way that would cause a reasonable person to believe that he or she has knowingly and voluntarily consented, whether or not the person actually intends to consent.'" *Cedano–Medina*, 366 F.3d at 684–85.  Furthermore, "[c]onsent . . . may be inferred from the subject's 'words, gestures, and other conduct.'" *Garcia-Garcia*, 957 F.3d at 895 (quoting *Jones*, 254 F.3d at 695).  "[O]fficers need not always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search." *United States v. Drayton*, 536 U.S. 194, 196 (2002).

Ms. Watts maintains that Corporal Bailey abandoned the original reason for the stop without reasonable suspicion or probable cause in violation of *Rodriguez*, foreclosing her ability to give free consent, arguing that she was not free to leave at the time consent was given (Dkt. No. 13, ¶¶ 14–22).  The United States disagrees and argues that it is "clear" that "consent was valid" (Dkt. No. 38, at 4).  The Court has already determined that Corporal Bailey did not prolong the stop impermissibly and that, even if he prolonged the stop as Ms. Watts argues, Corporal Bailey had the requisite reasonable suspicion to extend his encounter with Ms. Watts and to ask for consent to search Ms. Watts' vehicle.  Moreover, based on the totality of the circumstances, the United States has shown by a preponderance of the evidence that Ms. Watts "freely and

voluntarily" gave her consent to search her vehicle. *Farnell*, 701 F.3d at 262–263; *Castellanos*, 518 F.3d at 969; *Sanders*, 424 F.3d at 773–74.

Video of the traffic stop shows Corporal Bailey ask Ms. Watts if there are "drugs" in her car (Dkt. No. 39). Ms. Watts shakes her head and says she's "positive" that there are no drugs in her car (*Id.*). When asked again if there are drugs in her car, Ms. Watts says no (*Id.*). Ms. Watts answers in the negative and begins to chuckle when asked if she has "big amounts of money" exceeding $100,000.00 in her car (*Id.*). Ms. Watts again replies "no" and continues to laugh while Corporal Bailey asks her if there are "guns" or "weapons of mass destruction" in her car (*Id.*). Corporal Bailey then asks: "Do you mind if I check?" (*Id.*). Ms. Watts responds: "You can check" (*Id.*). Corporal Bailey then clarifies to make sure that he has Ms. Watts' consent, asking: "I can [search the car]?" (*Id.*). Ms. Watts replies: "I mean, it's up to you." (*Id.*). Corporal Bailey responds: "Well, I would like to if you don't mind." (*Id.*). Ms. Watts then non-verbally shrugs and shakes her head in the affirmative as seen on the video, after which Corporal Bailey initiates the search of her car (*Id.*). Ms. Watts argues that this "consent" was a "mere acquiesce to a claim of lawful authority," citing *United States v. Welch*, 951 F.3d 901, 906 (8th Cir. 2020) (Dkt. No. 13, ¶18). The Court disagrees.

The Eighth Circuit Court of Appeals in *Welch*, 951 F. 3d at 904–05, addressed whether a suspect, who had been "arrested, handcuffed, and given Miranda warnings," consented to having a DNA swab. Specifically, the officer in *Welch* said to the suspect, after the suspect had been arrested: "So you're cool with me taking your DNA sample real quick?" *Id.* at 904. The suspect replied: "Yeah, I've done like three of them before . . . ." *Id.* The officer then took the DNA swab, not informing the suspect that he could refuse the DNA swab. *Id.* On these facts, the district court, taking into consideration the suspect's "age, intelligence, sobriety, experience with the

15

criminal justice system . . ." and the fact that the suspect was *Mirandized*, found that the suspect had given "voluntary consent." *Id.* at 906. The Eighth Circuit found no clear error with the district court's finding of voluntary consent. *Id.*

Viewing the interaction between Ms. Watts and Corporal Bailey in the light of *Welch* and controlling precedent, the Court is unconvinced that Ms. Watts' consent was a "mere acquiesce to a claim of lawful authority" (Dkt. No. 13, ¶ 18). Rather, taking into account the totality of the circumstances and weighing the factors discussed in *Sanders*, 424 F. 3d at 773, the Court finds that the United States has shown by a preponderance of the evidence that Ms. Watts gave free and unincumbered consent to search her vehicle.

While it is true that Ms. Watts was not placed under arrest or *Mirandized* prior to Corporal Bailey seeking permission to search her car, she had reached the age of majority,[3] appeared sober, and had previous experience with the criminal justice system, and nothing in the record indicates that Ms. Watts is of below-average intelligence (Dkt. Nos. 38-1, at 1, 3; 39). *See generally Sanders*, 424 F. 3d at 773. Furthermore, record evidence indicates that less than nine minutes transpired between the time Corporal Bailey initiated the stop and his request for consent to search Ms. Watts' car.[4] There is no evidence that Corporal Bailey threatened, physically intimidated, or

---

[3] The incident report provided to the Court redacts Ms. Watts' birth date (Dkt. No. 38-1, at 1). However, according to a confidential case summary submitted by the United States Attorney's Office, Form CS07, Ms. Watts is 46 years of age. The Court attaches and seals this form as Court's Exhibit 1.

[4] The Court, after reviewing the video of this incident, concludes that the initial seizure of Ms. Watts for driving with an expired vehicle tags occurred at timestamp 1:01 (Dkt. No. 39). It is at this point that she signals that she is pulling over to the side of the road after Corporal Bailey turned on his patrol car lights (*Id.*). *See United States v. Grant,* 696 F.3d 780, 784 (8th Cir. 2012) (quoting *Florida v. Bostick,* 501 U.S. 429 (1992), for the proposition that a seizure only occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen"). Corporal Bailey requested Ms. Watts' consent to search the vehicle at time

16

punished Ms. Watts before requesting consent; video of the incident does not show Corporal Bailey make promises or misrepresentations; Ms. Watts gave consent in a public place; and Ms. Watts stood by silently without protest as the search occurred (Dkt. No. 39). Ms. Watts also gave clear and unequivocal consent for Corporal Bailey to search her car when she said, "you can check [the car]," and later shook her head affirming her consent after being asked again (*Id.*). Based on the totality of the circumstances, Ms. Watts' words, gestures, and the lack of a "contemporaneous reaction to the search [that] was [in]consistent with consent" demonstrate that the consent provided was freely given and sufficient to render Corporal Bailey's actions constitutionally sound. *Garcia-Garcia*, 957 F.3d at 895; *Sanders*, 424 F.3d at 773.

Additionally, the parties do not raise, but the Court has considered, whether Ms. Watts' consent to search her car extended to the packages Corporal Bailey opened. The Court is satisfied that the scope of Ms. Watts' permission extended to these packages, having examined the scope of her permission under the objective reasonableness standard. *See United States v. Siwek*, 453 F.3d 1079, 1084–85 (8th Cir. 2006).

For these reasons, weighing the totality of the circumstances, the Court finds the United States has shown by a preponderance of the evidence that Ms. Watts freely consented to the search of her vehicle. Consent, as a valid exception to the warrant requirement, demonstrates that Corporal Bailey did not violate Ms. Watts' rights secured by the Fourth Amendment, foreclosing Ms. Watts' ability to make use of the exclusionary rule. *See generally Farnell*, 701 F.3d at 262–63.

---

stamp 9:32 (*Id.*). Based on the Court's calculation, 8:31 passed between initiation of the stop and Corporal Bailey's requesting permission to search her car (*Id.*).

### III.     Conclusion

For the foregoing reasons, the Court denies Ms. Watts' motion to suppress (Dkt. Nos. 8; 13).

It is so ordered this 25th day of May, 2023.

_____
Kristine G. Baker
United States District Judge